

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN C. WELD, JR., On behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. H-99-0957 |
| STAGE STORES, INC., CARL TOOKER, TYLER INTERNATIONAL, TYLER MASSACHUSETTS, L.P., TYLER CAPITAL FUND L.P., BCIP TRUST ASSOCIATES L.P., BCIP ASSOCIATES, BAIN CAPITAL, INC., BAIN VENTURE CAPITAL, ACADIA PARTNERS L.P., ACADIA FW PARTNERS L.P., ACADIA MGP, INC., OAK HILL PARTNERS, INC., SANDRA BORNSTEIN, ERNEST R. CRUSE, RIGO HERNANDEZ, JERRY C. IVIE, JOANNE SWARTZ, MARK SHULMAN, MEL WARD, DONALD R. WESTBROOK, JAMES MARCUM, STEPHEN LOVELL, CHARLES SLEDGE, ADAM KIRSCH, JOSHUA BEKENSTEIN, PETER G. MULVIHILL, CREDIT SUISSE FIRST BOSTON and BEAR, STEARNS & CO., INC., | § § § § § § § § § § § § § § § § § § | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS ENTERED  DEC 8 1999  Michael N. Milby, Clerk |
| Defendants. | § § | |

| MEMORANDUM AND ORDER |
|---|

## I. INTRODUCTION

The plaintiff, John C. Weld, Jr., asserts this action on behalf of himself and all others who purchased stock in Stage Stores (hereinafter "the Company") during the period May 5, 1997, and August 6, 1998 (hereinafter "The Class period"). The Company is headquartered in Houston, Texas, and it manages hundreds of casual clothing stores in small communities throughout the central United States. The defendants, Arcadia Partners, L.P. (hereinafter "Acadia")[1] and Bain Capital, Inc. (hereinafter "Bain")[2], are investment firms that held a controlling interest in the Company preceding the Secondary Offering. The defendants Bear Stearns and Credit Suisse First Boston (hereinafter "CSFB") are investment banking and financial institutions. The remaining defendants are current or former officers and/or directors of the Company.[3]

The plaintiff filed this suit against the defendants under §§ 10(b) & 20(a) of the Securities Exchange Act of 1934 and Security Exchange Commission Rule 10b-5. The defendants have filed motions to dismiss pursuant to the Private Securities Litigation Reform Act of 1995 (hereinafter "The Reform Act"), 15 U.S.C. § 78u-4(b) (1995), Fed. R. Civ. P. 9(b) and 12(b)(6). After an exhaustive consideration of the motions, response, replies, pleadings and applicable law, the Court

---

[1] Acadia also includes Acadia FW Partners L.P., Acadia MGP, Inc., Oak Hill Partners, Inc. and Peter Mulvihill.

[2] Bain also includes Bain Venture Capital, Tyler International L.P. II, Tyler Massachusetts, L.P., Tyler Capital Fund L.P., BCIP Trust Associates L.P., BCIP Associates, Adam Kirsch and Joshua Bekenstein.

[3] Of this group, Carl Tooker, Jerry C. Ivie, Joanne Swartz, Stephen Lovell, Mark Shulman, Mel Ward, Donald R. Westbrook, Sandra Bornstein, Ernest R. Cruise, Rigo Hernandez, James Marcum and Charles Sledge are affiliated with the Company; Kirsch and Bekenstein are with Bain (as noted); and Mulvihill is with Acadia (as noted).

GRANTS the defendants' motions to dismiss the claims.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1988, the Company obtained outside financing from two independent investor groups, Acadia and Bain. Beginning with a base of 188 stores, in November, 1994, the Company procured a chain of 45 Beall-Ladymon stores. The Company acquired an additional 34 Uhlman stores in June, 1996. In March, 1997, the Company announced that it would purchase the 246-store chain of C.R. Anthony stores. The acquisitions were completed in June, 1997. The needed conversion of these stores was scheduled to take place over the following twelve months.

In October, 1996, the Company sold 11,000,000 shares of stock to the public in an initial public offering. The stock was priced at $16.50 per share. In the months that followed, the Company announced the C.R. Anthony acquisition (as noted), reported a positive refinancing of its primary debt and disclosed both the loss and replacement of its head merchandiser. By August, 1997, the market price for the Company stock had approached the $30 per share mark.

At that point, the Company announced its intent to hold a secondary offering of its stock. In a conference call on August 27, 1997, the day of the announcement, the Company's Chief Financial Officer, James Marcum, stated that "[the selling shareholders in that offering are Bain Capital and Acadia Partners Limited. These shares represent approximately 22.3 percent of the total outstanding shares of the Company."

In the prospectus for the secondary offering, the company detailed its operations and plans, including its specific strategy for the conversion of the C.R. Anthony stores. Additionally, the

3

prospectus contained a section detailing risk factors that a potential investor might encounter.[4] The secondary offering was priced at $34-7/8 per share. The secondary offering was completed on September 17, 1997.

As the Company continued to integrate the C.R. Anthony stores into the Company operation, quarterly sales and earnings for the remainder of 1997 and the beginning of 1998 showed same-store sales increases over the preceding year. After March, 1998, the market price of the stock reached a level of approximately $50 per share. The price remained at that level throughout the spring of 1998. Sales performance for the Company remained the same in June 1998; but by July, 1998, there was a five percent decline over the previous year's sales. Subsequently, the Company's stock price declined.

## III. THE STANDARD OF REVIEW

### A. *Failure to state a claim*

The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be proper only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988). When considering a

---

[4]These risk factors included:
    (1) The Company had a considerable amount of outstanding indebtedness that might restrict financial and operational flexibility.
    (2) The Company's growth plans were contingent upon various managerial and operational factors.
    (3) The retail clothing business is largely seasonal and highly competitive. The Company faced substantial competition.
    (4) The Company's success relied partially on its ability to anticipate and expeditiously react to changing consumer preferences and fashion trends.
    (5) The capability of the Company to confront these challenges hinged to a large extent on its upper management. Departures by these individuals could have a material adverse effect on the Company's business and financial condition.

12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in a light most favorable to the plaintiff. *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). A motion to dismiss for failure to state a claim is granted only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court notes, however, that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Campbell v. San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (stating that conclusory facts that merely create suspicion are not accepted as true); *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir. 1995) (holding that conclusory allegations will not suffice). The Court will not pull together a "tangled web" of multiple pleadings and actions to ascertain whether a plaintiff has enunciated a meritorious claim. *Dillard v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 961 F.2d 1148, 1157 (5th Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993) (agreeing with district court that the plaintiff failed to state a claim under either RICO or federal civil rights law).

A motion to dismiss for failure to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure is treated as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 901 (5th Cir. 1997).

 B. *Claim of fraud: Rule 9(b) and The Reform Act*

To state a claim based on § 10(b) of the Securities Exchange Act of 1934, the plaintiff must allege "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's

5

injury." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997). Rule 9 of the Federal Rules of Civil Procedure provides a heightened pleading requirement for allegations of fraud. To satisfy the burden imposed by Rule 9, the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177.

The Reform Act imposes additional burdens on the plaintiff in a securities fraud action. If the plaintiff's allegations are based on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (1998); *Zuckerman v. Foxmeyer Health Corp.*, 4 F. Supp.2d 618, 622 (N.D. Tex. 1998). The plaintiff must also distinguish among the defendants, attributing each allegedly fraudulent statement to a particular defendant or defendants. *Id.*

Moreover, the plaintiff must allege facts that demonstrate scienter. *Id.* Prior to the enactment of the Reform Act, the plaintiff could adequately plead scienter "by pleading facts which allege a defendant's motive and opportunity to commit securities fraud." *Id.* The Reform Act, however, provides that securities fraud plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (1998). The plaintiff may satisfy "the heightened pleading requirements of Rule 9 and § 10(b), as amended by the [Reform Act], by alleging either motive and opportunity to commit fraud, or by pleading facts which identify circumstances indicating defendants' conscious or reckless behavior, so long as the totality of the allegations raises a strong inference of fraudulent intent." *Zuckerman*, 4 F. Supp.2d at 623.

6

## IV. DISCUSSION

*A. Fraud in company statements* and documents

The plaintiff contends that the defendants have committed fraud. To fortify this allegation, the plaintiff cites to a myriad of comments by the Company's management regarding the Company's performance generally, and the acquisition of the C.R. Anthony stores specifically. The Court is unpersuaded. In an action for securities fraud, vague statements of optimism are not material because a reasonable investor would not rely on them.[5] *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993). "[P]rojections of future performance not worded as guarantees are generally not actionable under the federal securities laws. *Id.*

Although the Court declines to discuss each of the statements in detail here, it is the finding of the Court that the Company used cautionary language in its forward-looking statements and identified them as such.[6] Prior to the more stringent pleading requirements of

---

[5] The following statements allegedly made by the company are illustrative of the genre that the Court finds to be non-actionable optimism:
May 20, 1997: "Our pending acquisition of C.R. Anthony Company continues to proceed as expected."
July 15, 1997: "Stage Stores has an extremely competent and deep management team and its management team's depth extended to the regional and local levels . . . . We are very pleased that Harry [Brown] has joined Stage Stores . . . . [H]is talent and foresight will enable Stage to continue as one of the fastest growing retailers in the industry."

[6] The following warnings were made at the beginning of the telephone calls:

Before we begin our discussions today, I'd like to remind everyone that any remarks that may be understood to be statements about future expectations, plans or prospects, are considered to be forward-looking statements for the purposes of the SEC Safe Harbor provisions. Such forward-looking comments are subject to the impact of risks and uncertainties as discussed in the company's prospectus and annual report on Form 10K. Actual results may differ due to these factors.

7

the Reform Act[7], the Fifth Circuit, in *Ruberstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994), had already adopted the reasoning of the Third Circuit:

> [when such] forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the 'total mix' of information . . . provided [to] investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.

*In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3rd Cir. 1993). The Court is of the opinion that the cautionary language contained in the Company's statements was sufficient to render any alleged misrepresentations immaterial.

The Court also notes that allegations that simply quote from a corporation's public statements while averring that such statements are false or misleading are insufficient to properly plead security fraud. *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1066 n.4 (5th Cir. 1994). "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail. The . . . complaint here, although long, states little with particularity." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) *cert. denied*, 522 U.S. 966 (1997).

In the instant case, the plaintiff's 95 page complaint quotes generously from sundry historical and forward-looking statements by the company and others. Then, the plaintiff

---

[7] Pursuant to the Reform Act, liability does not attach for statements that the Company identifies as forward-looking when they are coupled with meaningful cautionary language except if, on the face of the complaint, the plaintiff demonstrates that the speaker had actual knowledge that the statement was false or misleading when it was made. 15 U.S.C. §§ 77z-2(c)(1)(B)(I) & 78u-5(c)(1)(B)(I). The Court finds no evidence of actual knowledge here.

summarily states that the statements are false and misleading, alleging that the statements fail to divulge the "true facts" according to the plaintiff. The Court is of the opinion that allegations, such as the ones in the complaint, which quote statements in reports and then make contradictory statements are inadequate to survive a motion to dismiss.

As the court in *Coates* observed, an unsubstantiated imprecise claim of the existence of a confidential company document is also inadequate to overcome a motion to dismiss. *Coates v. Heartland Wireless Communications, Inc.* 26 F. Supp.2d 910, 920 (N.D. Tex. 1998). A majority of well-managed companies create an array of reports at regular intervals. *Id.* at 921. Accordingly, any company that discloses low earnings would be exposed to bald assertions that the reports exist and that they indicate poor results. *Id.* As noted, to create a clear inference of fraud, the plaintiff must afford more particulars about the avowed adverse internal reports, such as document titles, when they were prepared, who prepared them, to whom they were focused, their substance and the sources from which the plaintiff acquired this information. *Id.* This prerequisite is harmonious with the Reform Act's information and belief standard that requires the plaintiff to plead all of the facts of which their contentions are based. *Id.* The plaintiff has not provided this requisite information with the degree of specificity required by the Reform Act. Thus, it is the finding of the Court that the plaintiff has failed to adhere to the particularity requirement mandated in the Reform Act as well as Rule 9(b) of the Federal Rules of Civil Procedure.

### B. *Multiple defendants*

The Court is also of the opinion that the plaintiff has failed to plead who committed the alleged securities fraud violation with any degree of particularity. "[A] plaintiff must state

9

with particularity the facts that give rise to a strong inference that the defendant acted with the required state of mind." *Coates*, 26 F. Supp.2d at 916. The plaintiff must "allege facts regarding scienter as to each defendant." *Id*. Allowing a plaintiff to rely on group pleading would be "nonsensical." *Id*. Group pleading is incompatible with the purposes of the Reform Act. *Id*. at 916.

### C. Scienter

A claim under § 10(b) and Rule 10-5 requires that the plaintiff allege scienter, the "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n.12 (1976). Pursuant to the Reform Act, the plaintiff is required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "Without sufficiently pleading scienter, plaintiffs' complaint essentially alleges fraud by hindsight." *Coates, Inc.* 26 F. Supp.2d at 921. The Court finds that no such inference has been pled.

The plaintiff also seeks to plead scienter founded upon motive and opportunity. He maintains that the defendants who were connected with the secondary offering were driven to inflate the stock price so as to increase the returns from the second offering. The Court finds this argument untenable. "[T]his is the familiar 'They did it for the Money' course . . . . [The Court is] not moved by this music." *Melder v. Morris,* 27 F.3d 1097, 1103 (5th Cir. 1994). Because the language is unambiguous, the Court adopts the plain meaning of this statute. A reading of the plain language of this statute leads the Court to the inescapable finding that, in the case at bar, the plaintiff's pleadings, of the less onerous requirement of motive and opportunity, are insufficient to raise a strong inference of scienter.

10

### D. Information and Belief

As noted, under the Reform Act, the plaintiff choosing to plead on information and belief must state with particularity the facts on which the belief is based. 15 U.S.C. § 78u-4(b)(1). The Court is of the opinion that allegations formed on information and belief based on the Company's public filings and other publicly available information is insufficient to meet this burden.

### E. Controlling Person

"Because the plaintiff [has] failed to state a claim for any predicate securities fraud offense under § 10(b), the plaintiff has necessarily failed to state a claim against [the defendants] for 'controlling person' liability under § 20(a)." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996). Pursuant to § 20(a), the plaintiff is required to plead specific facts to demonstrate how each individual defendant possessed the power to control or prevent the primary securities violation.

### F. Money Damages

The Reform Act provides that, to receive money damages under § 20(a), the plaintiff must show that the defendants acted with the requisite state of mind. A controlling person will not be held liable under this statute if his acts were not at least reckless. Under 15 U.S.C. 78u-4(b)(2), the plaintiff is required to demonstrate that the defendants participated in or prompted the alleged primary violation. The Court is of the opinion that the plaintiff has failed to meet his burden. Hence, money damages are not appropriate.

11

## VI. CONCLUSION

In light of the foregoing analysis, it is the conclusion of the Court that the plaintiff has both failed to aver his claim of fraud with particularity and neglected to state a claim upon which relief can be granted. Thus, it is the judgment of the Court that the defendants' motions to dismiss the complaint should be GRANTED.

It is so ORDERED.

Signed this 8th day of December, 1999.

KENNETH M. HOYT
United States District Judge